# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Rufus Rivers and Merle Rivers, Appellants,

v.

James Smith, Jr., Respondent.

Appellate Case No. 2020-000451

————————

Appeal From Orangeburg County
Edgar W. Dickson, Circuit Court Judge

————————

Opinion No. 5992
Submitted March 1, 2023 – Filed June 21, 2023

————————

## REVERSED

————————

Rufus Rivers, of Cordova, pro se.

Merle Rivers, of Cordova, pro se.

Kathleen McColl McDaniel and Sarah Jean Michaelis
Cox, both of Burnette Shutt & McDaniel, PA, of
Columbia, both for Respondent.

————————

**HEWITT, J.:** Rufus and Merle Rivers appeal a circuit court order affirming a magistrate's order of eviction. They contend the case falls within a statute prohibiting magistrates from exercising jurisdiction when title to the property is at issue. Based on that, they argue the magistrate erred in finding a landlord-tenant relationship existed between them and James Smith, Jr., and in ordering them to pay rent into the magistrate's registry to secure a stay while they appealed the eviction. We agree and reverse.

**FACTS**

This case concerns property once owned by James Smith's deceased mother, Jessie Mae Smith (Jessie Mae). The Rivers have lived on the property since 2009. There is no record of a written lease agreement between the Rivers and either Jessie Mae or James.

In July 2013, Jessie Mae executed a power of attorney designating James as her authorized agent and granting him authority to spend her finances, sell or dispose of her property, and make her healthcare decisions. In September 2014, James transferred the property to himself, on Jessie Mae's behalf, via a quitclaim deed. This deed was recorded the following month. James presented evidence to the magistrate that the Orangeburg County Tax Assessor's Office has identified him as the owner of record since September 2014. Jessie Mae died in 2016.

In July 2018, roughly two years after Jessie Mae died, James sent the Rivers a letter demanding they vacate the property within thirty days. The Rivers refused. They asked James to cease and desist any effort to displace them, claimed James held an invalid power of attorney, and alleged he had breached fiduciary duties. Competing lawsuits followed.

The Rivers sued James in the Orangeburg County Court of Common Pleas. The suit challenged James's ownership of the property and alleged constructive fraud, unjust enrichment, and other causes of action. The Rivers filed an amended complaint a few days later alleging that James used an invalid power of attorney from Jessie Mae and that Jessie Mae had orally given or promised the property to them.

Around the same time, James filed this case against the Rivers in magistrate court seeking to evict them from the property. The magistrate conducted a hearing not long after the case was filed.

The Rivers made various arguments to the magistrate in opposing the eviction, but there is no disputing that the arguments involved an alleged promise by Jessie Mae to give them the property. The record suggests the Rivers alerted the magistrate to their circuit court lawsuit against James. The Rivers asked the magistrate to dismiss the eviction action and allow James to add his claims to the circuit court case.

According to the magistrate's return, James's main argument was that the Rivers' circuit court case and their claim to own the property lacked any conceivable merit

because the alleged gift from Jessie Mae would have occurred more than three years before any lawsuits were filed. James argued the Rivers' ownership claims would therefore be barred by the applicable statute of limitations.

After the testimony and arguments concluded, the magistrate orally ruled that James was the current and lawful owner of the property, that the Rivers were tenants, and that the Rivers unlawfully occupied the property.

The Rivers filed a motion for reconsideration. Among other things, they argued the magistrate lacked jurisdiction, that they had informed the magistrate both orally and in writing of their circuit court case, and that James was using the eviction process to circumvent the circuit court case.

The magistrate held a hearing on the motion for reconsideration, at which the Rivers presented a court record reflecting that their case against Smith had been referred to the master-in-equity. The magistrate denied the motion based on its previous finding that Smith owned the property. The magistrate determined the case did not involve a question in title and that she had jurisdiction to hear the dispute.

The Rivers appealed the magistrate's decision to circuit court. The case was continued after a first hearing based on the Rivers' contention that their circuit court suit against James involved a challenge to his claim of title, but after that—and after the master-in-equity dismissed the Rivers' suit against James for failing to state a claim upon which relief could be granted—the circuit court affirmed the magistrate's decision and ordered a writ of ejectment to be issued. The circuit court found the Rivers' jurisdictional issue to be moot. The court stated that Smith owned the property and that although "the Rivers attempted to challenge Smith's title to the [p]roperty, this challenge was dismissed by the [master] for failure to state a claim upon which relief could be granted." This appeal followed.[1]

**ISSUE**

Whether section 22-3-20(2) of the South Carolina Code (2007)—which bars a magistrate from hearing a case when title to real property is in question—prohibited the magistrate from considering this case.

**STANDARD OF REVIEW**

---

[1] The Rivers recently filed a "motion to vacate" with this court. The motion primarily discusses events outside of the record. After careful review, the motion is denied.

We are bound by the factual findings under review as long as they are supported by any evidence. *See Vacation Time of Hilton Head Island, Inc. v. Kiwi Corp.*, 280 S.C. 232, 233, 312 S.E.2d 20, 21 (Ct. App. 1984). Even so, "[d]etermining the proper interpretation of a statute is a question of law, and [the appellate court] reviews questions of law de novo." *Palmetto Co. v. McMahon*, 395 S.C. 1, 3, 716 S.E.2d 329, 330 (Ct. App. 2011) (quoting *Town of Summerville v. City of North Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008)).

## JURISDICTION OVER THE EVICTION

The legislature has provided that "[n]o magistrate shall have cognizance of a civil action . . . when the title to real property shall come into question, except as provided in Article 11 of this chapter." S.C. Code Ann. § 22-3-20(2). A series of statutes—sections 22-3-1110 to -1180—govern the procedure in cases where title is challenged.

The reason for this rule appears to be that summary proceedings in magistrate court are only appropriate when the conventional landlord-tenant relationship is established. *See Stewart-Jones Co. v. Shehan*, 127 S.C. 451, 455-56, 121 S.E. 374, 376 (1924) (discussing a constitutional provision that has since been substantially codified in section 22-3-20). As one might guess from the date in the citation, there do not appear to be many cases interpreting this rule; certainly not any modern ones. An even older case explains that while the ejectment statute was designed to establish an efficient means for ejecting trespassers, it was not intended to give someone an advantage when there is a dispute over rightful possession. *Richland Drug Co. v. Moorman*, 71 S.C. 236, 239, 50 S.E. 792, 793 (1905).

Precedent explains the magistrate retains jurisdiction if the defendant does not comply with the statutory procedure for raising a question as to title or offer any evidence drawing title into question. In *Bamberg Banking Co. v. Matthews*, for example, our supreme court upheld the magistrate's jurisdiction in spite of the defendant's claim that she owned the property and the lease she signed with the bank was procured through fraud and duress. 132 S.C. 130, 132-33, 128 S.E. 718, 719 (1925). The court noted the defendant did not follow proper procedure, did not deny the lease at the hearing, and offered no evidence of fraud or duress. *Id*. *Barnes v. Charleston & Western Carolina Railway Co.* follows the same reasoning. 106 S.C. 227, 230, 90 S.E. 1017, 1018 (1916) (noting the defendant denied the plaintiff's allegations but did not comply with the statutory procedure and did not offer any testimony at the foreclosure hearing).

This case is not like *Bamberg Banking Co.* and *Barnes*. This is not a situation where a defendant feigns a challenge to title but has no actual arguments to muster. This case also differs from those cases in that the Rivers complied with the statutory procedures. A statute allowed them to raise questionable title as a defense in their answer to the foreclosure suit, and they provided the magistrate and Smith with their signed answer raising that defense at the hearing. *See* S.C. Code Ann. § 22-3-1110 (2007). A different statute required them to file an undertaking as assurance that the defendant will promptly file an action in circuit court over title to the property, *see* S.C. Code Ann. § 22-3-1120 (2007), but the Rivers cleared this bar with room to spare—they filed their circuit court suit before Smith filed his case to evict them. They gave the magistrate and Smith copies of the summons and complaint at the hearing.

If this was all there was to the case, we think there would be no question as to the outcome. Smith certainly has defenses to the Rivers' claims, and those defenses may be good ones, but our reading of precedent convinces us the magistrate's jurisdiction ends as soon as it becomes clear that there is a challenge to title and the traditional landlord-tenant relationship does not exist. But, as we noted in the background, the master-in-equity dismissed the Rivers' case against James while the Rivers' appeal of the magistrate's decision was pending. The Rivers did not appeal the master's decision. Absent an appeal or a proper motion under Rule 60, SCRCP, the master's order is binding. The circuit court found this rendered any jurisdictional defect moot.

We cannot agree. If the magistrate did not have jurisdiction over the eviction case, it lacked jurisdiction to enter the eviction order and that order is a nullity. *See, e.g.*, *Leviner v. Sonoco Prods. Co.*, 339 S.C. 492, 494, 530 S.E.2d 127, 128 (2000) (stating an order issued without jurisdiction was a nullity). We are not presented with any authority that subsequent events like the master-in-equity's order here can reach back in time and ratify an order that was issued by a court that lacked jurisdiction to do so. This case may well end in a second but successful eviction, but we cannot say that outcome is certain.

**CONCLUSION**

Our holding controls the related issues regarding a landlord-tenant relationship and the rent funds in escrow. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive). Based on the foregoing, the magistrate's order of eviction is

**REVERSED.**[2]

**THOMAS and MCDONALD, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.